UNITED STATES, Appellee

v

ALLEN HENRY WEISENMULLER, Aircrew Survival Equipmentman Third Class, U. S. Navy, Appellant

17 USCMA 636, 38 CMR 434

No. 20,999

June 28, 1968

*Lieutenant Robert F. Baldwin,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Captain W. H. Hogan, Jr.,* USNR.

*Lieutenant Charles Freeland,* USNR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche,* USMC.

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of one specification of wrongful use of marihuana and two specifications of wrongful possession of marihuana, all in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to a bad-conduct discharge, forfeiture of $70.00 per month for six months, confinement at hard labor for six months, and reduction. The convening authority approved the sentence, and the board of review affirmed. We granted accused's petition for review upon the assigned issue:

"WHETHER THE ACCUSED WAS DENIED MILITARY DUE PROCESS AND HIS RIGHT TO SPEEDY TRIAL BY THE UNDUE DELAY FROM 8 MARCH 1967 TO 7 SEPTEMBER 1967."

I

At the trial below, individual counsel sought dismissal of the charges on the basis of denial to the accused of his right to a speedy trial and violations of Code, supra, Articles 10 and 33, 10 USC §§ 810, 833. In support thereof, he offered proof that the accused had been placed in restriction on March 8, 1967, and that such continued until August 11, 1967, when he was transferred to the U. S. Naval Base, Treasure Island, California, for his trial, which thereafter took place on September 7, 1967. The accused's original station was the U. S. Naval Air Station, Lemoore, California, and he was there restricted to a restriction barracks cubicle, the head and laundry room, operations area necessity store, mess hall, barber shop, his squadron hangar working area, mainside mess hall, and direct routes to and from these places. During the period of this restriction, he was required to muster during the week with the duty master-at-arms on an hourly basis from 4:30 p.m. until 9:30 p.m. On Saturdays, Sundays, and holidays, he was required so to muster at 7:00 a.m., 9:00 a.m., 11:00 a.m., 1:00 p.m., 2:00 p.m., 3:00 p.m., 4:00 p.m., 5:30 p.m., 6:30 p.m., 7:30 p.m., 8:30 p.m., and 9:30 p.m.

He was also barred from entering the Enlisted Men's Club or any other place in which alcoholic beverages were served. He was required to sleep in an assigned bed and not allowed to leave its immediate area between the hours of 10:00 p.m. and 6:00 a.m., except to use toilet facilities.

While it appears that such limitations were applied as pretrial restraint, they, in fact, were identical to those employed in connection with punitive restrictions imposed by court-martial or under Code, supra, Article 15, 10 USC § 815.

According to the sole witness presented by the Government on the issue, Weisenmuller was restricted both to insure his availability for trial and to

**637**

prevent recurrence of his alleged misconduct. The report of investigation was received from the Office of Naval Intelligence during the first week of March and indicated there was sufficient evidence to prosecute fourteen individuals, including the accused. However, accused's pretrial investigation was delayed until June 7, in order that other offenders might be tried by court-martial and used as witnesses against him. All but one of these were completed by April 24. The final prospective witness was tried on that date, but a rehearing was necessitated, and its result was not finally approved until July 19.

On several occasions, the accused visited his unit legal officer and sought to be released from restriction. Each such request was denied on the basis of insuring his availability and to prevent his commission of another offense. Defense counsel also unsuccessfully sought the same relief from accused's Executive Officer. Accused had no prior record of unauthorized absences.

The Government offered the following chronology in support of its opposition to the defense motion:

"7 March 1967—Commencement of investigation by the Office of Naval Intelligence.

28 March 1967—Completion of investigation.

4 April 1967—Investigation forwarded to VA–125.

6–13 April 1967—Summary Courts-Martial conducted on principals.

24–25 April 1967—Supervisory action completed on summary courts-martial.

24 April 1967—AMHAN Stephen W. Hungerford tried by special court-martial.

5 May 1967—Pretrial investigating officer appointed for Weisenmuller.

17 May 1967—AA Karl D. Kite tried by special court-martial.

Request for counsel for Weisenmuller for pretrial investigation submitted.

19 May 1967—Charges preferred against Weisenmuller.

31 May 1967—Counsel assigned for pretrial investigation.

7 June 1967—Pretrial investigation conducted.

28 June 1967—Rehearing conducted in the case of U. S. v Hungerford.

7 July 1967—Pretrial investigation record forwarded to Commandant, Twelfth Naval District, recommending trial by general court-martial.

19 July 1967—Supervisory action completed in the case of U. S. v Hungerford.

31 July 1967—Charge sheet, investigative officer's report and staff legal officer's pretrial advice forwarded to Commandant, Twelfth Naval District for referral to trial by general court-martial.

2 August 1967—Case of U. S. v Weisenmuller referred to trial by general court-martial.

10 August 1967 — Weisenmuller transferred to Naval Station, Treasure Island, San Francisco, Calif.

23 August 1967—Memo from defense counsel to trial counsel stating completion of preparation for trial.

23 August 1967—Accused served a copy of the charges.

7 September 1967—Date of trial."

The endorsement forwarding the charges with a recommendation for trial by general court-martial contained no explanation of the reasons for the delay, nor does the staff legal officer's advice to the convening authority mention the matter.

The law officer overruled the defense motion, and the trial proceeded to accused's ultimate conviction and sentence.

II

The United States concedes the accused was restricted under the enu-

merated conditions from March 8, 1967, until August 11, 1967, and that there was no formal compliance with Code, supra, Articles 10 and 33. It urges, however, that the Government was at all times diligently engaged in forwarding the case's prosecution and that it satisfactorily explained the period in question by demonstrating it constantly moved with reasonable dispatch toward the accused's trial. We disagree.

Code, supra, Article 10, provides, *inter alia:*

". . . When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

Code, supra, Article 33, also provides pertinently:

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

We have many times construed these Articles and pointed out the rights which they confer upon accused persons. See United States v Schalck, 14 USCMA 371, 34 CMR 151; United States v McKenzie, 14 USCMA 361, 34 CMR 141; United States v Williams, 16 USCMA 589, 37 CMR 209; United States v Lamphere, 16 USCMA 580, 37 CMR 200; and United States v Parish, 17 USCMA 411, 38 CMR 209. In United States v Schalck, supra, we expressly adverted to the accused's right to trial without unnecessary delay and characterized it as inextricably bound together with that to due process. In *McKenzie,* supra, we emphasized "the duty and responsibility of every officer to comply with the mandates of the Uniform Code," that delay be avoided and the reasons therefor be set forth in compliance with Code, supra, Article 33 United States v McKenzie, supra, at page 364. Indeed, we noted the Article "has been observed more often in the breach than in following its clear terms" and suggested "the attention of all concerned with the processing of court-martial matters be forcibly drawn to its unambiguous command." *Id.,* at page 364.

Since the decision in those cases, we have had further occasion to point out that unnecessary delay, dependent upon the facts and circumstances, may necessitate reversal and dismissal of the charges—not as a punitive measure but because the accused's substantial statutory and constitutional right to be free from unnecessary trial delay and the harassment inherent in pretrial restraint was violated to his prejudice. United States v Lamphere, United States v Parish, both supra.

Unfortunately, the facts and circumstances of the present case demonstrate another instance of a prejudicial invasion of the accused's rights. Although the record reflects the completion of an investigation into the accused's activities, together with what the Government's witness characterized as sufficient evidence for his prosecution, he remained under the most stringent restraints until August 11, a period in excess of five months. Indeed, the record reflects that Weisenmuller admitted his guilt of possession and use of marihuana on March 8 and that, on the same day, a search of his locker disclosed presence of that substance. Nevertheless, his trial did not take place until September 7.

In United States v Williams, supra, we condemned the delay in accused's trial when it appeared he had been restricted to his company area for one hundred thirty-eight days without adequate explanation. We there pointed out the need for compliance with Code, supra, Article 33, when an accused was placed in arrest or confinement pending trial and charges against him were not forwarded within the eight-day period. We declared that the fact Williams' restraint "was labeled 'restriction' does

**639**

not change his status in fact." *Id.*, at page 592. The same consideration applies here. Weisenmuller, regardless of the label attached to his condition, was as surely placed in arrest as if he had been expressly so told. Indeed, the conditions imposed upon him were unusually stringent and, as the transcript indicates, were no different from those of a punitive limitation on his freedom.

Moreover, though he persistently sought his enlargement, such was not only denied him, but no steps were seemingly taken to expedite the handling of his case. Thus, the record establishes that it was not until May 19 that charges were preferred—an unexplained lapse of seventy-two days after he had made his statement and marihuana was discovered in his locker. The pretrial investigation was not conducted until June 7, almost a month later, and was not forwarded to the officer exercising general court-martial jurisdiction until July 7, thirty additional days later. Finally, the case was not then referred for trial until July 31, almost five months after accused admitted his guilt and permitted the inculpatory search of his belongings.

We are aware of the Government's contention it was necessary to try the other accused involved in order to use them as witnesses against Weisenmuller and that this occasioned the delay. See Frankel v Woodrough, 7 F2d 796 (CA 8th Cir) (1925), and Beavers v Haubert, 198 US 77, 49 L ed 950, 25 S Ct 573 (1905). In this instance, however, the record does not indicate such to have been the case. Regardless of the fact that two of these men did eventually testify for the prosecution, the Government's own chronology nevertheless shows lengthy, unexplained periods of inactivity at each stage of the proceedings from the initial preference of charges to the preparation of the staff legal officer's advice.[1] Under the circumstances, therefore, we find a prejudicial violation of accused's rights and reverse. United States v Schalck, supra; United States v Parish, supra.

We nevertheless pause once more to invite attention to the express command of the Congress in Code, supra, Article 33, that charges shall be forwarded in eight days, or "[i]f that is not practicable, he shall report in writing . . . the reasons for delay." We reiterate our belief that it would be a relatively simple matter to comply with this positive requirement of the law and, thus, to explain on the record the reasons for otherwise untoward delay while the accused languishes in *durance vile*. Such action would soon quiet the course of troubled appellate waters and insure that each man would receive the speedy, fair disposition of his case to which he is entitled under the Uniform Code, eliminating otherwise needless reversals.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Navy. The charge and its specifications are ordered dismissed.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

I would affirm the decision of the board of review. United States v Boehm, 17 USCMA 530, 536, 38 CMR 328.

---

[1] We are aware of the explanations tendered by the Government at this level in the form of affidavits, as well as the additional material in similar form urged by the accused. None of this was presented to the law officer and, as it is with the propriety of his ruling that we are concerned, we give it no consideration here. It is at the trial and not on appeal that these explanations should be heard. United States v Schalck, 14 USCMA 371, 34 CMR 151.